ORAL ARGUMENT NOT SCHEDULED YET

**09-7109 Consolidated with 09-7158**

IN THE

United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT



ASID MOHAMAD, individually and
for the ESTATE OF AZZAM RAHIM;
SHAHID MOHAMAD; SAID MOHAMAD; SHAHED AZZAM RAHIM;
MASHHUD RAHIM; MOHAMAD RAHIM; ASIA RAHIM,

*Plaintiffs-Appellants,*

*against*

JIBRIL RAJOUB; AMIN AL-HINDI; TAWFIK TIRAWI;
PALESTINIAN AUTHORITY, also known as PALESTINIAN INTERIM
SELF-GOVERNMENT AUTHORITY;
PALESTINE LIBERATION ORGANIZATION,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court
for the District of Columbia*

# CORRECTED REPLY BRIEF
# FOR PLAINTIFFS-APPELLANTS

JAROSLAWICZ & JAROS, LLC
*Attorneys for Plaintiffs-Appellants*
225 Broadway, 24th Floor
New York, New York 10007
212-227-2780

*Of Counsel:*
  Robert J. Tolchin

## **Table of Contents**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ....................................................... ii

SUMMARY OF ARGUMENT.................................................. 1A

POINT I

THE COURT BELOW ERRONEOUSLY DISMISSED
THE RAHIM FAMILY'S TVPA CLAIMS ................................................ 1

POINT II

THE FAC SATISFIED THE GOVERNMENTAL AUTHORITY
AND "COLOR OF LAW" REQUIREMENT OF THE TVPA ............. 10

POINT III

THE COURT BELOW ERRONEOUSLY DISMISSED
THE INTERNATIONAL LAW CLAIMS ................................................ 16

POINT IV

THE COURT BELOW ERRONEOUSLY VACATED
DEFENDANTS' DEFAULT ....................................................... 19

CONCLUSION ......................................................... 20

CERTIFICATE OF COMPLIANCE ....................................................... 22

## Table of Authorities

**Cases**

*American Soc'y of Mechanical Eng'rs v. Hydrolevel,* 456 U.S. 556 (1982)..........................................................................................9

*American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421 (3d Cir. 1994) ...................................................8

*Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398 (1964)..............................18

*Biton v. Palestinian Interim Self-Gov't Auth.,* 510 F. Supp. 2d 144 (D.D.C. 2007) (PA/PLO remain non-state)...........................................11

*Bodner v. Banque Paribas,* 114 F. Supp. 2d 117 (E.D.N.Y. 2000) ...................18

*Boim v. Holy Land Found. for Relief & Dev.,* 549 F.3d 685 (7th Cir. 2008) ........................................................................................9

*Boim v. Quranic Literacy Inst. and Holy Land Foundation,* 291 F.3d 1000 (7th Cir. 2002) ..........................................................................9

*Budget Service Co. v. Better Homes of Va.,* 804 F.2d 289 (4th Cir. 1986) ..........................................................................................2

*Consolidated Edison Co. of New York, Inc. v. Pataki,* 292 F.3d 338 (2d Cir. 2002) ..............................................................................2

---

*Authorities on which we chiefly rely are marked with asterisks.

*In re Atlantic Business and Community Corp.*, 901 F.2d 325 (3d
    Cir. 1990) ....................................................................... 1

*Jones v. Mukasey*, 565 F. Supp. 2d 68 (D.D.C. 2008) ....................................... 19

*\*Kadic v. Karadzic*, 70 F.3d 232 (2d. Cir. 1995)....................................... 5, 13, 15

*Knox v. Palestine Liberation Organization*, 306 F. Supp. 2d 424
    (S.D.N.Y. 2004) ..................................................................... 11

*Linde v. Arab Bank*, 384 F.Supp.2d 571, 583 (E.D.N.Y. 2005) ........................ 10

*Northwestern University v. U.S.D.A.*, 403 F. Supp. 2d 83 (D.D.C.
    2005) ..................................................................... 20

*Odom v. Microsoft Corp.*, 486 F.3d 541(9th Cir. 2007)....................................... 1

*Petro-Tech v. Western Co. of North America*, 824 F.2d 1349 (3d
    Cir. 1987) ..................................................................... 9

*Presbyterian Church of Sudan v. Talisman Energy, Inc.* 374 F.
    Supp. 2d 331 (S.D.N.Y. 2005)................................................... 6

*Serra v. Lappin*, 600 F.3d 1191 (9th Cir. 2010) ................................................ 17

*Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345 (S.D.Fla.
    2003) ..................................................................... 6

*Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009) ......................... 9

*Sinclair Broadcast Group, Inc. v. F.C.C.*, 284 F.3d 148 (D.C. Cir.
    2002) ..................................................................... 17

*Sokolow v. Palestine Liberation Organization*, 583 F. Supp. 2d 451 (S.D.N.Y. 2008) ................................................................ 11

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) .................................... 16

*U.S. Commodity Futures Trading v. Musorofiti*, 2007 WL 2089388 (E.D.N.Y. 2007) ................................................................ 2, 19

*\*U.S. v. Middleton*, 231 F.3d 1207 (9th Cir. 2000) ............................... 2

*U.S. v. Wecht*, 537 F.3d 222 (3d Cir. 2008) ........................................ 16

*Ungar v. Palestine Liberation Organization*, 402 F.3d 274 (1st Cir. 2005) ................................................................ 11

*\*Weaver v. U.S. Information Agency*, 87 F.3d 1429 (D.C. Cir. 1996) ................................................................ 7

*Whittaker v. District of Columbia*, 228 F.R.D. 378 (D.D.C. 2005) .................... 20

**Statutes and Rules, and Other Authorities**

18 U.S.C. § 2333 ................................................................ 12

18 U.S.C. § 2337(2) ................................................................ 12

18 U.S.C. § 2337(2) ................................................................ 2

28 U.S.C. § 1350 note § 2(a) ........................................................ 12

28 U.S.C. §§ 1602-1611 ................................................................ 12

H.R.Rep. No. 367, 102d Cong., 2d Sess., at 5 (1991), *reprinted in*
    1992 U.S.C.C.A.N. 84, 87 .................................................................. 5, 13

L. Henkin, *Foreign Affairs and the Constitution* 222 (1972) ........................... 17

Moore, *Federalism and Foreign Relations*, 1965 Duke L.J. 248 ....................... 17

## SUMMARY OF THE ARGUMENT

1.    The court below erroneously dismissed the Rahim Family's TVPA action. Appellees' claim that the term "individual" unambiguously means "natural person" is without merit; in fact, that term has frequently been held by the federal courts to include non-natural persons.

Since the term "individual" is ambiguous, the federal courts look to the purpose of the statute, and particularly to the harm that the statute seeks to prevent, in deciding whether it includes non-natural persons.

The TVPA was intended to grant U.S. citizens a civil remedy for acts of torture or extrajudicial killing, and it would be absurd to conclude that Congress intended to protect U.S. citizens from torture and extrajudicial killing carried out by individuals, but not that carried out by organizations.

Defendants' argument that because the term "individual" is used in the TVPA to refer to both the victim and the perpetrator it must refer to a natural person in both instances should be rejected because federal courts give the same term in a single statute different meanings where the subject-matter or the conditions to which the terms refer is not the same. Since only a natural person can be tortured or killed the fact that Congress used the

word "individual" in the TVPA to refer to the victim does not evince an intention to exclude non-natural persons as perpetrators/defendants.

Defendants' argument that because organizations cannot directly carry out torture or extrajudicial killing permitting TVPA actions against them would require reading aiding and abetting liability into the statute should be rejected because: (1) it is circular, since if Congress intended to include organizational defendants in the term "individual" then the organization itself is the primary tortfeasor (2) organizational defendants can be held liable under respondeat superior which the federal courts have found to be substantively different than aiding and abetting liability and to apply even when the latter does not (3) the federal courts have found that the TVPA permits aiding and abetting liability.

2.    The FAC satisfies the governmental authority and "color of law" requirement of the TVPA. Even though neither Appellee is a "foreign state," the PA *is* a non-sovereign governing entity, which operates and maintains its own police forces and prisons, such as that in which the decedent was tortured and murdered. The TVPA uses the term "foreign nation," not "foreign state." By contrast, the FSIA consistently uses the term "foreign state," and establishes it as a distinct term of art.

The fact that Congress carefully avoided using the term "foreign state" in the TVPA clearly proves that Congress did not intend the TVPA to apply only to conduct carried out under the aegis of a "foreign <u>state</u>" within the meaning of the FSIA, and that actions taken under the authority or color of law of any foreign <u>government</u> (even if not a state) will suffice.

3.    The court below erroneously dismissed the international law claims. Appellees' claim that the dismissal of the Appellants' international law claims was proper because *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) held that that claims for a violation of the law of nations cannot be pursued under 28 U.S.C. § 1331 is without merit. *Sosa* contained no such ruling.

4.    The court below erroneously vacated defendants' default. Appellees' argument that in addition to the jurisdictional arguments that they asserted as their "meritorious defense" in support of their motion to vacate, they also denied liability in their Reply in further support of their motion to vacate is without merit because (1) a litigant cannot raise an argument for the first time in its reply and (2) Appellees' utterly bald denials of liability in their Reply do not satisfy the "meritorious defense" requirement.

<u>**REPLY BRIEF FOR APPELLANTS**</u>

<u>**ARGUMENT**</u>

**POINT I**

**THE COURT BELOW ERRONEOUSLY DISMISSED THE RAHIM FAMILY'S TVPA CLAIMS**

Appellees make several arguments in response to Appellants' assertion that the court below erred by dismissing Appellants' TVPA claims on the grounds that the TVPA permits actions only against natural persons, all of which are without merit.

Appellees' first argue that the term "individual" unambiguously means "natural person" and that the Court therefore need look no further than the literal text of the statute.

This claim is baseless. The term "individual" has frequently been held to include non-natural persons. *See, e.g., Odom v. Microsoft Corp.,* 486 F.3d 541, 548 (9th Cir. 2007) (holding that two corporations, Best Buy and Microsoft, could constitute a "group of individuals associated in fact" under RICO since "a corporation can be an 'individual' for purposes of an associated-in-fact enterprise."); *In re Atlantic Business and Community Corp.,* 901 F.2d 325, 329 (3d Cir. 1990) ("Although Section 362(h) [of the

Bankruptcy Code] refers to an individual, the section has uniformly been held to be applicable to a corporate debtor.") (citing *Budget Service Co. v. Better Homes of Va.*, 804 F.2d 289, 292 (4th Cir. 1986)); *Consolidated Edison Co. of New York, Inc. v. Pataki*, 292 F.3d 338, 349 (2d Cir. 2002) (Holding that "corporations must be considered 'individuals' that may not be singled out for punishment under the Bill of Attainder Clause in Article I, Section 10."). (internal brackets and citation omitted); *U.S. v. Middleton*, 231 F.3d 1207, 1210-13 (9th Cir. 2000) (Holding that the term "individuals" in 18 U.S.C. § 1030(e)(8)(A) includes corporations).

Clearly, then, the meaning of the term "individual" is ambiguous.

The decisions in *Middleton* and *Consolidated Edison* are particularly instructive here. In *Middleton*, the appellee argued – like the Appellees here – that "in common usage the term 'individuals' excludes corporations." *Middleton*, 231 F.3d at 1210. The Ninth Circuit rejected this claim:

> We examine first the ordinary meaning of "individuals." That word does not necessarily exclude corporations. *Webster's Third New Int'l Dictionary* 1152 (unabridged ed. 1993) provides five definitions of the noun "individual," the first being

-2-

"a single or particular being or *thing or group of* beings or *things*." (Emphasis added.) To the extent that a word's dictionary meaning equates to its "plain meaning," a corporation can be referred to as an "individual." …

Neither is "individual" a legal term of art that applies only to natural persons. As *Black's Law Dictionary* 773 (6th ed.1990) states:

> **Individual.** As a noun, this term denotes a single person as distinguished from a group or class, and also, very commonly, a private or natural person as distinguished from a partnership, corporation, or association; *but it is said that this restrictive signification is not necessarily inherent in the word, and that it may, in proper cases, include artificial persons.*

(Emphasis added.) *See also Black's Law Dictionary* 777 (7th ed. 1999) (stating that "individual" refers to "an indivisible entity" or a "single person or thing"). Because "individual" as a general legal term does not exclude corporations, we next consider applicable precedent.

In *Clinton [v. City of New York],* the Supreme Court held that Congress intended to include *corporations* within a provision of the Line Item Veto Act that authorized "any *individual* adversely affected" to challenge the Act's constitutionality. 524 U.S. at 428, 118 S.Ct. 2091 (emphasis added). The Court examined the purpose of the provision (to allow expedited

judicial review of the Line Item Veto Act) and determined that Congress could not have intended that only natural persons be able to demand expedited review. *Id.* at 429, 118 S.Ct. 2091. That interpretation, noted the Court, would produce an "absurd and unjust result which Congress could not have intended." *Id.*

So, too, here…It is highly unlikely, in view of Congress' purpose to stop damage to computers used in interstate and foreign commerce and communication, that Congress intended to criminalize damage to such computers only if the damage is to a natural person. Defendant's interpretation would thwart Congress' intent.

*Middleton*, 231 F.3d at 1210-11.

Thus, given the ambiguity of the term "individual," the *Middleton* court looked to the underlying purpose of the statute.

Likewise, in *Consolidated Edison*, the Second Circuit concluded that "individual" included corporations for the purpose of the prohibition on bills of attainder, because corporations, no less than individuals, can be harmed by bills of attainder:

We have been unable to unearth any case in which a corporation has ultimately prevailed in challenging legislation as a bill of attainder-cases finding a bill of attainder targeting any party are extraordinarily rare. Nevertheless, bills of attainder historically have

-4-

> targeted corporations as well as natural persons. Con
> Ed cites several English statutes that imposed
> disabilities on English boroughs, hardly natural
> persons. Moreover, one of the types of punishment
> most frequently imposed by bills of pains and
> penalties, punitive confiscation of private property, is
> one that may injure a corporation in the same way it
> injures an individual.

*Consolidated Edison*, 292 F.3d at 349.

This Court should take the same approach as the *Middleton* and *Consolidated Edison* courts: *i.e.*, given the clear ambiguity (so to speak) of the term "individual," this Court should interpret this term by looking to the harm that Congress was seeking to prevent in enacting the TVPA.

The TVPA was intended to grant U.S. citizens a civil remedy for acts of torture or extrajudicial killing. *Kadic v. Karadzic*, 70 F.3d 232, 241 (2d. Cir. 1995) ("Congress enacted the Torture Victim Act to codify the cause of action recognized [under the ATCA], and to further extend that cause of action to plaintiffs who are U.S. citizens." (citing H.R.Rep. No. 367, 102d Cong., 2d Sess., at 4 (1991), reprinted in 1992 U.S.C.C.A.N. 84, 86)).

It would be absurd to conclude that Congress intended to protect U.S. citizens from torture and extrajudicial killing carried out by individuals, but not that carried out by organizations. Such a conclusion

would particularly strange in light of the fact that an ATCA action, which may only be brought by an alien, can be brought against an organizational defendant. S*ee e.g. Presbyterian Church of Sudan v. Talisman Energy, Inc.* 374 F. Supp. 2d 331, 332 (S.D.N.Y. 2005) ("corporations may be held liable for violations of jus cogens norms").

Appellees have not explained, because they cannot, why Congress would allow foreigners to sue in U.S. courts for acts of torture and extrajudicial killing committed by organizations, but deprive U.S. citizens of such a remedy.

Moreover, "the legislative history does not reveal an intent to exempt private corporations from liability." *Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1358-59 (S.D.Fla. 2003) *aff'd* 578 F.3d 1252 (11th Cir. 2009).

Defendants next argue that because the term "individual" appears twice in the TVPA, referring to both the victim and the perpetrator, it should be interpreted consistently throughout the statute, pursuant to the usual canons of statutory interpretation. But this argument fails because the same term <u>should</u> be given different meanings where appropriate:

> Normally, the same word appearing in different portions of a single provision or act is taken to have the same meaning in each appearance. Like all rules of statutory construction, however, this one is

> defeasible. Identical words <u>may have different</u> <u>meanings where the subject-matter to which the</u> <u>words refer is not the same</u> in the several places where they are used, <u>or the conditions are different</u>, or the scope of the legislative power exercised in one case is broader than that exercised in another.

*Weaver v. U.S. Information Agency*, 87 F.3d 1429, 1437 (D.C.Cir. 1996) (internal citations and quotations omitted, emphasis added).

That is exactly the case here. Obviously, only a natural person can be tortured or killed. Accordingly, the fact that Congress used the word "individual" in the TVPA to refer to the victim is of no moment, and certainly does not evince an intention to exclude non-natural persons, which in any event cannot be tortured or killed.

By contrast, the perpetrator of acts of torture or extrajudicial killing can, in fact, be either a natural or a non-natural person.

Therefore, "the subject-matter to which the words refer is not the same" and "the conditions are different" (*Weaver, id.*) and the term "individual" in the TVPA can and should be interpreted differently in respect to the victim than in respect to the perpetrator.

Defendants also argue that "organizations and corporations cannot directly carry out torture or extrajudicial killing, so implicit in the

argument that 'individual' includes non-natural persons is the assumption that the statute imposes secondary liability, such as under an aiding and abetting theory, without expressly so providing. Such a conclusion, however, would be unwarranted in light of the statute's silence on the subject of secondary liability. (Brief of Appellees at 25-26, citing *Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164 (1994)).

This argument fails for multiple reasons:

*First*, it is circular and assumes the answer to the very question at issue. If Congress intended to include organizational defendants in the term "individual" then the organization <u>itself</u> is the <u>primary</u> tortfeasor.

*Second*, Appellees assume that aiding and abetting liability is the sole form of secondary liability. It is not. Organizational defendants can be held liable under agency principles – *i.e., respondeat superior* – which is substantively different than aiding and abetting liability and applies even when the latter does not. *See American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1429-33 (3d Cir. 1994) (analyzing the differences between aiding and abetting and *respondeat superior,* and holding that *Central Bank* was irrelevant to the latter).

The First Amended Complaint ("FAC") in this action clearly pleads facts giving rise to Appellees' respondeat superior liability. JA at A63-67.

*Third*, the federal courts have found that the TVPA permits aiding and abetting liability. *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1258 n. 5 (11th Cir. 2009). This finding comports with the rule that "the applicability of common law doctrines in litigation under federal statutes depends on whether those principles advance the goals of the particular federal statute which plaintiffs allege has been violated." *Petro-Tech v. Western Co. of North America,* 824 F.2d 1349, 1356 (3d Cir. 1987) (citing *American Soc'y of Mechanical Eng'rs v. Hydrolevel,* 456 U.S. 556, 570 (1982)).[1]

---

[1] Appellees cite *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689-90 (7th Cir. 2008) (*en banc*) as purported support for the proposition that statutory silence on secondary liability means there is none. This is a misreading of *Boim.* An earlier decision in that case, *Boim v. Quranic Literacy Inst. and Holy Land Foundation*, 291 F.3d 1000 (7th Cir. 2002) held that the statute at issue, 18 U.S.C. § 2333, does allow for aiding and abetting liability. In its 2008 decision, the majority of the Seventh Circuit held that resort to aiding and abetting liability was unnecessary, because § 2333 imposes primary liability for conduct that would typically be considered aiding and abetting. As a result, the majority never decided the issue of whether secondary liability was available, as one of the judges in

*(continued next page)*

In sum, the holding of the court below that a TVPA action can be brought only against a natural person was in error and should be reversed.

## POINT II

## THE FAC SATISFIED THE GOVERNMENTAL AUTHORITY AND "COLOR OF LAW" REQUIREMENT OF THE TVPA

Appellees argue that (though the court below did not reach this issue) the FAC should also have been dismissed on the grounds that the TVPA imposes liability only if the torture or extrajudicial killing is committed "under actual or apparent authority, or color of law, of any foreign nation." 28 U.S.C. § 1350 note § 2(a) (emphasis added), and neither the Palestinian Authority ("PA") nor the PLO is a foreign state.

It is well established, and Appellants certainly agree, that neither the PA nor the PLO is a "foreign state" within the meaning of the Foreign Sovereign Immunities Act ("FSIA") or under international law. *See,*

---

the minority noted: "The *en banc* majority expresses doubts about this holding, although in the end it neither adopts it nor rejects it." *Boim*, 549 F.3d at 720. Other federal courts have held that such liability does exist. *See e.g. Linde v. Arab Bank*, 384 F.Supp.2d 571, 583 (E.D.N.Y. 2005).

-10-

*e.g., Ungar v. Palestine Liberation Organization*, 402 F.3d 274, 282-292 (1st Cir. 2005); *Biton v. Palestinian Interim Self-Gov't Auth.*, 510 F. Supp. 2d 144, 147 (D.D.C. 2007) (PA/PLO remain non-state); *Sokolow v. Palestine Liberation Organization*, 583 F. Supp. 2d 451, 457-58 (S.D.N.Y. 2008) (same).

Appellees' argument fails, however, because although neither Appellee is a foreign state, the PA *is* a non-sovereign governing entity, which operates and maintains its own police forces and prisons (such as that in which the decedent was tortured and murdered). *See, e.g., Knox v. Palestine Liberation Organization*, 306 F. Supp. 2d 424, 433 (S.D.N.Y. 2004) (under the Oslo Accords "Palestinians would immediately establish a police force and would have immediate authority over 'education and culture, health, social welfare, direct taxation, and tourism' in Palestine"); Dkt. # 14 at Exhibit B (discussing conditions in "PA prisons and detention centers") and *id*. ("PA security forces included the National Security Forces (NSF), the Preventive Security Organization (PSO), the General Intelligence Service (GI), the Presidential Guard (PG), and the Police. Quasi-military security organizations, such as the Military Intelligence, exercised the equivalent of law enforcement powers. The PSO, the civil police, and civil defense fall under the legal control of the interior minister, who reports to the prime minister.").

Though Appellees claim that the TVPA contains a "state" action requirement it does not. The TVPA uses the term "foreign nation," not "foreign state." By contrast, the FSIA consistently uses the term "foreign state," and establishes it as a distinct term of art. *See* 28 U.S.C. §§ 1602-1611. Congress uses that same term of art –"foreign state" – when delineating the liability of foreign states under other federal statutes. Thus for example, 18 U.S.C. § 2337(2), provides that a civil action for international terrorism under 18 U.S.C. § 2333 may not be maintained against "a foreign state [or] an agency of a foreign state." 18 U.S.C. § 2337(2).

The TVPA, however, does not use the recognized and clearly defined term of art "foreign state." Instead, the TVPA speaks broadly of conduct performed under the authority of "any foreign nation." § 1350 note (2)(a).

The fact that Congress carefully avoided using the term "foreign state" in the TVPA clearly proves that Congress did not intend the TVPA to apply only to conduct carried out under the aegis of a "foreign state" within the meaning of the FSIA, and that actions taken under the authority or color of law of any foreign government (even if not a state) will suffice.

-12-

This construction is strongly supported by the legislative history of the TVPA, which confirms that this "foreign nation" language was intended to "make[] clear that the plaintiff must establish <u>some governmental involvement</u> in the torture or killing to prove a claim," and that the statute "does not attempt to deal with torture or killing by <u>purely private groups</u>." H.R.Rep. No. 367, 102d Cong., 2d Sess., at 5 (1991), *reprinted in* 1992 U.S.C.C.A.N. 84, 87 (emphasis added).

Thus, Congress required only that the action be carried out under the aegis of a <u>government</u>, not a foreign <u>state</u> and not "purely <u>private</u> groups."

Appellees' attempt to present the FSIA and TVPA as co-extensive is therefore erroneous.

This conclusion squares perfectly with the holding in the Second Circuit's seminal decision in *Kadic v. Karadzic*, 70 F.3d 232 (2d. Cir. 1995) that a TVPA action can be brought for an act of torture or extrajudicial killing carried out "under actual or apparent authority, or color of law" of an entity such as the PA – *i.e.*, a government which is *not* a foreign state.

In *Kadic*, the Second Circuit was faced with the question of whether atrocities committed by president of the self-proclaimed Bosnian-

Serb republic of "Srpska" were carried out "under actual or apparent authority, or color of law, of any foreign nation" within the meaning of the TVPA and ATCA.[2] The Second Circuit answered this question in the affirmative, <u>on two completely separate grounds</u>:

*First*, the Second Circuit noted that though Srpska was not a recognized "foreign state," plaintiffs had alleged that in fact it satisfied the four accepted criteria of statehood. *Id.* at 245.

*Second*, and critically for the instant case, the Second Circuit held that a <u>governmental</u> defendant is subject to suit under the TVPA <u>even if it is not a "foreign state"</u>:

> Moreover, it is likely that the state action concept, where applicable for some violations like "official" torture, <u>requires merely the semblance of official authority</u>. The inquiry, after all, is <u>whether a person purporting to wield official power has exceeded internationally recognized standards of civilized conduct, not whether statehood in all its formal aspects exists</u>.

*Id.* (Emphasis added).

---

[2] Appellees claim that *Kadic* dealt only with the ATCA but a reading of the decision makes clear that the Second Circuit's analysis of the "state-action" issue relates to both the ATCA and the TVPA.

-14-

Thus, under this second prong of *Kadic* – which dovetails perfectly with the language of the TVPA – the PA's lack of statehood is of no moment. The relevant point is that the decedent was tortured and murdered by persons acting under <u>governmental</u> authority – *i.e.* under the "official authority" and "official power" of the PA government. Appellants' TVPA claims are therefore entirely valid.

Appellees argue nonetheless that "there is an inherent illogic to suing the PA or PLO for acting under color of law of the PA or PLO. Even in *Kadic*, the plaintiffs sued Karadzic, not the quasi-state, Srpska. Logically, the 'individual' acting under color of law of a foreign nation (or, quasi-state) cannot also be the foreign nation." (Brief of Appellees at 44).

This argument fails for two reasons. First, there is nothing illogical at all about saying that the acts of a government itself are carried out under the authority, or under the color of law, of that government. Second, as discussed *supra*, the FAC alleges that Appellants decedent was tortured and murdered by employees of the Appellees acting pursuant to actual authority vested in them by the PA – which renders Appellees liable under basis principles of respondeat superior. *See* JA at A63-67.

In sum, the FAC satisfies the TVPA's governmental authority and "color of law" requirement.

POINT III

THE COURT BELOW ERRONEOUSLY DISMISSED THE
INTERNATIONAL LAW CLAIMS

The Appellees argue that the dismissal of the Appellants'
international law claims was proper, on the purported grounds that in
"*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), the Supreme Court [rejected]
the notion that federal common law claims for a violation of the law of
nations can be pursued under section 1331 in the absence of jurisdiction
under the Alien Tort Statute." (Brief of Appellees at 45).

In support of this claim, Appellees cite a footnoted remark by
Justice Souter that "we know of no reason to think that federal-question
jurisdiction was extended" to permit statutory claims derived from the law
of nations. *Sosa*, at 731 n.19.

It is clear, however, that Justice Souter's "no reason to think"
footnote is pure *obiter dictum*, since it had nothing whatsoever to do with
the resolution of the case.

A footnoted *dictum* is not binding, and is clearly insufficient
grounds for this Court to affirm the court below. *See, e.g., U.S. v. Wecht*, 537
F.3d 222, 234 n. 24 (3d Cir. 2008) ("[W]e will not conclude from a single
passage of Supreme Court dicta that the question is decisively settled.

-16-

Rather, we treat the question as unsettled."). *See also, e.g., Sinclair Broadcast Group, Inc. v. F.C.C.*, 284 F.3d 148, 170 (D.C. Cir. 2002) (A party cannot "duck[] for cover under...the Supreme Court's dicta.").

      This is especially so here, given that the question at issue here is weighty (subject-matter jurisdiction) and that there is abundant support for the proposition that § 1331 provides jurisdiction over violations of the law of nations, as the numerous cases and authorities cited in Appellants' Brief (*Kadic*, *Filartiga*, *Presbyterian Church, Abebe-Jiri, Martinez-Baca, Suarez-Mason, Sarei*[3] and *Tel-Oren* (Edwards, *J.,* citing Moore, *Federalism and Foreign Relations*, 1965 Duke L.J. 248, 291-97 and L. Henkin, F*oreign Affairs and the Constitution* 222-23 (1972)) clearly demonstrate.

---

[3] Appellees point out that in *Serra v. Lappin*, 600 F.3d 1191 (9th Cir. 2010), another panel of the Ninth Circuit recently ruled contrary to *Sarei*. This proves nothing more than that there is no clear rule in the Ninth Circuit on this issue. The rationale stated in *Serra* (and relied upon by Appellees) that if § 1331 allowed suits for violations of international law the ATCA and TVPA would be unnecessary is weak at best: Congress often legislates a specific remedy where, as here, courts have been hesitant to rely on existing statutory frameworks. Moreover, the *Serra* court overlooked the fact that the ATCA was enacted long before § 1331.

Additionally, the court in *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117 (E.D.N.Y. 2000) pointed to *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 415 (1964) as further support for this proposition:

> Federal courts have jurisdiction over claims involving violations of customary international law. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 415, 84 S. Ct. 923, 11 L.Ed.2d 804 (1964) (holding cases arising under international law fall within Article III judicial power). The Second Circuit has noted that it is a "settled proposition that federal common law incorporates customary international law." *Kadic v. Karadzic*, 70 F.3d 232, 246 (2d. Cir. 1995). This Circuit also has recognized that international law likely falls under 28 U.S.C. § 1331 federal question jurisdiction. *Filartiga*, 630 F.2d at 887.

*Id.*, 114 F. Supp. 2d at 127.

Therefore, this Court should give this issue the full-throated analysis it deserves, and find that federal courts have jurisdiction pursuant to § 1331 to hear actions arising from violations of customary international law.

## POINT IV

## THE COURT BELOW ERRONEOUSLY VACATED DEFENDANTS' DEFAULT

Appellees do not dispute that a motion to vacate default should only be granted if the defendant presents a "meritorious defense," since absent a meritorious defense it would be pointless to grant the motion. *U.S. Commodity Futures Trading v. Musorofiti,* 2007 WL 2089388 at *4 (E.D.N.Y. 2007) ("[W]ithout a valid defense, there is no point in setting aside the default judgment") (quotation omitted).

Appellees argue, however, that reversal of the decision of the district court should not result in reinstatement of the default, because in addition to the jurisdictional arguments that they asserted as their "meritorious defense" in support of their motion to vacate, they also denied <u>liability</u> in their Reply in further support of their motion to vacate. (*See* Brief of Appellees at 55, citing to Dkt. # 17, which was Appellees' Reply).

This argument fails for two reasons:

*First*, it is fundamental that a litigant cannot raise an argument for the first time in its reply. *Jones v. Mukasey*, 565 F. Supp. 2d 68 (D.D.C. 2008) ("As the D.C. Circuit has consistently held, the Court should not

-19-

address arguments raised for the first time in a party's reply. Therefore, the plaintiff's motion to strike these arguments will be granted"); *Northwestern University v. U.S.D.A.*, 403 F. Supp. 2d 83, 87 (D.D.C. 2005) ("The court … cannot consider arguments that are raised for the first time in a reply").

Since Appellees' newfound denial of liability was raised for the first time in their Reply, that denial should be ignored. Indeed, Appellants filed a motion to strike that part of Appellees' Reply, on which the court below never ruled. Dkt. # 19.

*Second*, Appellees' bald denials of liability in their Reply do not satisfy the "meritorious defense" requirement. "No authority supports the proposition that a mere general denial of a plaintiff's allegations may be deemed a 'meritorious defense'.") *Whittaker v. District of Columbia*, 228 F.R.D. 378, 381 (D.D.C. 2005).

Therefore, if this Court reverses the court below, as Appellants respectfully believe it should, Appellees will be left with no meritorious defense and the order vacating their default should be reversed as well.

**CONCLUSION**

This appeal should be granted in all respects.

Dated: New York, New York
June 2, 2010

Respectfully submitted,

JAROSLAWICZ & JAROS, LLC
*Attorneys for the plaintiffs-appellants*

by: _____

Robert J. Tolchin, Esq.

225 Broadway, 24th floor
New York, New York 10007
212-227-2780

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,634 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Book Antiqua, 14 point font.

_____
JAROSLAWICZ & JAROS, LLC
Attorneys for Plaintiffs-Appellants
225 Broadway, 24th floor
New York, New York 10007
212-227-2780

**Prepared by PrintingHouse Press, Ltd.**
**10 East 39th Street, New York, NY 10016**
**Tel No: (212) 719-0990 Fax No: (212) 398-9253**

STATE OF NEW YORK                    )
COUNTY OF NEW YORK                )        SS

Dave Jackson, Being duly sworn, deposes and says that deponent is
not party to the action, and is over 18 years of age.

That on 7/20/2010 deponent caused to be served 2 copy(s) of the
within

<u>Appellants' Corrected Reply Brief</u>

upon the attorneys at the address below, and by the following
method:

**<u>By FedEx and ECF</u>**
Miller & Chevalier Chartered
Attorneys for Defendants-Appellees
655 15th Street, NW, Suite 900
Washington, D.C. 20005
202-626-5800

Sworn to me this Wednesday, July 20, 2010
ALLISON R. WADE
Notary Public, State of New York
No. 01WA6191434
Qualified in New York County Commission Expires 8/11/2012

Case Name:  Asid Mohamad v. Jibril Rajoub
Case No. 09-7109/09-7158